IN THE SUPREME COURT OF TEXAS















IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0648

════════════

 

In re AIU Insurance Company,
Relator

 

 

════════════════════════════════════════════════════

On Petition for Writ of Mandamus

════════════════════════════════════════════════════

 

 

Argued September 3, 2003

 

 

Chief Justice Phillips, joined by Justice O=Neill, Justice Jefferson, and Justice Schneider, dissenting.

 

Because
mandamus is an extraordinary remedy which undermines the normal appellate
process, courts reserve its use for very special circumstances.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex.
1992).  The writ issues when necessary to
Acorrect a clear abuse of discretion or
the violation of a duty imposed by law when there is no other adequate remedy
by law.@  Johnson v. Fourth Court of Appeals,
700 S.W.2d 916, 917 (Tex. 1985).

The
Court reasons that we should grant mandamus relief here to enforce this forum
selection clause because we routinely grant mandamus relief to enforce
arbitration agreements not governed by the Texas Arbitration Act, which the
Court characterizes as just Aanother
type of forum selection clause.@  ___ S.W.3d at ___.  But there are important differences between
arbitration agreements governed by federal law and forum selection
clauses.   While Texas
public policy has always encouraged arbitration, it has not always favored the
forum selection clause.

The
right to arbitration has been guaranteed in every Texas
constitution.[1]  See Tex. Const. art. XVI, ' 13 (repealed 1969); Tex. Const. of 1869, art. XII, ' 11; 
Tex. Const. of 1866, art. VII,
' 15; Tex. Const. of 1861, art. VII,
' 15; Tex. Const. of 1845, art. VII,
' 15. 
Forum selection clauses, on the other hand, were initially disfavored by
American courts because they were perceived to tamper with or Aoust@
a court=s
rightful jurisdiction. See Francis M. Dougherty, Annotation, Validity
of Contractual Provision Limiting Place or Court in Which Action May be Brought,
31 A.L.R.4th 404, 409-14 (1984); R. D. Hursh,
Annotation, Validity of Contractual Provision Limiting Place or Court in
Which Action May be Brought,  56
A.L.R.2d 300, 306-320 (1957).  Under this
Aouster doctrine,@
forum selection clauses were often described as void on public policy
grounds.  As the Supreme Court said in Ins.
Co. v. Morse:

 

Every
citizen is entitled to resort to all the courts of the country, and to invoke
the protection which all the laws or all those courts may afford him.  A man may not barter away his life or his
freedom, or his substantial rights.  In a
criminal case, he cannot, as was held in Cancemi's
Case, 18 New York 1287, be tried in any other manner than by a jury of
twelve men, although he consent in open court to be tried by a jury of eleven
men.  In a civil case he may submit his
particular suit by his own consent to an arbitration, or to the decision of a
single judge.  So he may omit to exercise
his right to remove his suit to a federal tribunal, as often as he thinks fit,
in each recurring case.  In these aspects
any citizen may no doubt waive the rights to which he may be entitled.  He cannot, however, bind himself in
advance by an agreement, which may be specifically enforced, thus to forfeit
his rights at all times and on all occasions, whenever the case may be
presented.

 

That the agreement of the insurance company is invalid upon
the principles mentioned, numerous cases may be cited to prove.  They show that agreements in advance to
oust the courts of the jurisdiction conferred by law are illegal and void.

 

Morse, 87
U.S. (20 Wall.)
445, 451 (1874) (emphasis added) (citations omitted).  Twenty years before that, the Massachusetts
Supreme Court explained the Aouster
doctrine@ in the
following oft-quoted passage:

 

The
rules to determine in what courts and counties actions may be brought are fixed,
upon considerations of general convenience and expediency, by general law; to
allow them to be changed by the agreement of parties would disturb the symmetry
of the law, and interfere with such convenience.

 

Nute v. Hamilton
Mut. Ins. Co., 72 Mass.
(6 Gray) 174 (1856).  This Court applied
the Aouster
doctrine@ in 1919
to reject enforcement of a forum selection provision in an insurance contract
which attempted to fix venue for suits against an insurance company in Dallas
County.  Int=l Travelers= Ass=n
v. Branum, 212 S.W. 630, 631 (Tex. 1919).  Incorporating quotes from Morse and Nute, this Court concluded that such a clause was Autterly against public policy.@ 
Id. at 632.  We
subsequently followed International Travelers to hold that parties could
not contract to avoid a mandatory venue statute.  Leonard v. Paxson,  654 S.W.2d 440, 441-42 (Tex. 1983); Fid.
Union Life Ins. Co. v. Evans, 477 S.W.2d 535, 536 (Tex. 1972); see also Ziegelmeyer v. Pelphrey, 125
S.W.2d 1038, 1040 (Tex. 1939) (Avenue
is fixed by law and any [agreement] to change the law with reference thereto is
void@).  Based on these decisions, at least one court
has concluded that Texas Atreats
forum-selection clauses as unenforceable per se.@  High Life Sales Co. v. Brown-Forman Corp.,
823 S.W.2d 493, 497, 497 n.3 (Mo. 1992).

Forum
selection clauses have gained much wider acceptance since the Supreme Court
replaced the Aouster
doctrine@ with a
more favorable view of them as a relevant commercial tool.  The Bremen
v. Zapata Off-Shore Co., 407 U.S.
1, 12-13, 15 (1972).  Moreover, a number
of Texas intermediate appellate
courts have joined this trend,[2]
International Travelers notwithstanding. 
See James T. Brittain, Jr., A
Practitioner=s Guide
to Forum Selection Clauses in Texas,
1 Hous. Bus. & Tax L.J. 79,
89-99 (2001).

But
even were I to agree that the forum selection clause is now presumptively valid
in Texas and that the trial court abused its discretion in failing to apply the
parties=
agreement in the underlying case, it does not follow that mandamus relief is
appropriate.  As a rule, we do not
specifically enforce contractual rights by mandamus.  We have done so in arbitration cases not just
because it effectuated the parties agreement, but because of other special
circumstances.  In Jack B. Anglin Co. v. Tipps, we
identified the procedural anomaly that permitted an interlocutory appeal from
the denial of arbitration under the state act, but not the federal act.  842 S.W.2d 266, 272 (Tex.
1992); see also In re Prudential, ___ S.W.3d ___, ___ (Tex.
2004) (Phillips, C.J. dissenting) (discussing arbitration mandamus cases). 

The
Court suggests that we must grant mandamus relief here to conserve judicial
resources, concluding that any trial in Texas  will be a waste of time and money.  But the cost or delay of having to go through
a trial and an appeal to correct an error does not make the remedy at law
inadequate.  Hooks v. Fourth Court of
Appeals, 808 S.W.2d 56, 60 (Tex.
1991).  Instead, the relator
must show that the trial court=s
ruling will Apermanently
deprive [it] of substantial rights.@  Polaris Inv. Mgmt. Corp. v. Abascal, 892 S.W.2d 860, 862 (Tex.
1995) (per curiam). 
The law provides remedies other than mandamus to assure that contracting
parties receive the benefit of their bargains. 
Thus, it is not inevitable that AIU will suffer irreparable loss if we
do not intervene at this stage of the litigation. The United States Supreme
Court has expressed a similar view, holding that a party=s
rights under a forum selection clause are not destroyed if vindication is
postponed until a final, appealable judgment is
rendered in the case.  Lauro Lines S.R.L. v.  Chasser, 490 U.S.
495, 501 (1989).  Justice Scalia, concurring separately, explained that a party=s right to the immediate enforcement of
a forum selection clause was simply not as important as the policy reasons for
circumscribing interlocutory appeals:

 

While it is true, therefore, that the Aright
not to be sued elsewhere than in [the selected forum]@
is not fully vindicated B
indeed, to be utterly frank, is positively destroyed B
by permitting the trial to occur and reversing its outcome, that is vindication
enough because the right is not sufficiently important to overcome the policies
militating against interlocutory appeals.

 

Id.  at 502-03.

 

Nor
do I believe that our action today, if indicative of things to come, will save
judicial resources over the long term. 
The writ of mandamus should not be an alternative to appeal, available
whenever an appellate court decides that trial court errors demanded swift
correction.  Bell Helicopter Textron,
Inc. v. Walker, 787 S.W.2d 954, 955 (Tex.
1990) (per curiam); Pope v. Ferguson, 445
S.W.2d 950, 954 (Tex. 1969).  It instead should be an extraordinary remedy
reserved to correct clear errors for which no other adequate remedy
exists.  See Walker
v. Packer, 827 S.W.2d 833, 840 (Tex.
1992); Johnson v. Fourth Court of Appeals, 700 S.W.2d at 916, 917 (Tex.
1985).  A disciplined adherence to this
latter limitation has generally been thought necessary to preserve Aorderly@
trial proceedings and to prevent the Aconstant
interruption of the trial process by appellate courts.@  Pope, 445 S.W.2d at 954.            

The
law clearly provides a remedy other than mandamus to assure that contracting
parties receive the benefit of their bargains. 
Because AIU has not shown that this remedy is inadequate, as that term
has been generally understood in this state, I would deny the writ.

 

 

____________________________________

Thomas R.
Phillips

Chief Justice

 

 

Opinion Delivered:     September 3, 2004

 











[1] Each constitution provided that it is
Athe duty of the Legislature to pass
such laws as may be necessary and proper to decide differences by arbitration,
when the parties shall elect that method of trial.@ 
Tex. Const. 1876, art.
XVI, ' 13 (repealed 1969).  This section was repealed by the voters in
1969 as one of the Aobsolete, superfluous and unnecessary
sections of the Constitution.@ 
Tex. H.J.R. No.3, 6lst Leg., R.S., 1969 Tex. Gen. Laws 3230.  The House Joint Resolution stated that the repealer was not intended to Amake any substantive changes in our
present constitution.@ 
Id.





[2]  
This trend to enforce forum selection clauses has not been without its
detractors. See, e.g., David H. Taylor & Sara M. Cliffe,
Civil Procedure by Contract: A Convoluted Confluence of Private Contract and
Public Procedure in Need of Congressional Control, 35 U. Rich. L. Rev. 1085, 1095, 1161
(2002) (noting that The Bremen was a Asea-change in the way private
agreement is viewed in relation to procedure@ and describing the judicially created
doctrine for enforcement of forum selection clauses as a Amess@).