608 F.Supp. 601 (1985)
Douglas R. BENGE and Pulson Corporation, Plaintiffs,
v.
SOFTWARE GALERIA, INC., Defendant.
No. 85-254C(1).
United States District Court, E.D. Missouri, E.D.
May 14, 1985.
*602 Mark A. Brittingham, Robert A. Useted, St. Louis, Mo., for plaintiffs.
Daniel T. Rabbitt, Brown, James & Rabbitt, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before this Court on several motions filed by defendant. First, defendant moved to dismiss plaintiffs' complaint for lack of personal jurisdiction. Second, defendant moved to transfer this case to the United States District Court for the Northern District of California on two (2) grounds: 1) a forum selection clause in an agreement between plaintiffs and defendant; 2) the doctrine of forum non conveniens. Finally, defendant moved to dismiss Count V of plaintiffs' complaint, which count purports to assert a claim under the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. § 1961 et seq., for failure to state a *603 claim upon which relief can be granted. After reviewing the allegations in plaintiffs' complaint, this Court will consider these motions seriatim.

I. PLAINTIFFS' COMPLAINT
Plaintiffs' claims arise out of a franchise agreement that they entered into with defendant on or about September 16, 1983. Plaintiff Douglas R. Benge (hereinafter "Benge") is President of plaintiff Pulson Corporation (hereinafter "Pulson"). Plaintiffs' complaint alleges that they entered into a franchise agreement with defendant Software Galeria, Inc., a California corporation with its principal place of business in the State of California, on or about September 16, 1983. Pulson is a Missouri corporation with its principal place of business, i.e., the "Software Galeria" franchise, in St. Louis County, Missouri. Subject matter jurisdiction of Counts I through IV is based on diversity of citizenship, 28 U.S.C. § 1332, and subject matter jurisdiction over Count V is based on 18 U.S.C. §§ 1961-64. The allegations concerning this Court's in personam jurisdiction over defendant are contained in paragraph 5 of plaintiffs' complaint, as follows:
[Defendant] transacts business, has made a contract, and has committed a tortious act within the State of Missouri all within the meaning of § 506.500.1(1), (2), and (3), R.S.Mo. and this Court may therefore assert personal jurisdiction over [defendant].
Count I of plaintiffs' complaint is a claim for fraud in the inducement of the franchise agreement and seeks, inter alia, rescission of said agreement and damages. Plaintiffs allege in Count I that defendant made certain representations to plaintiffs in both the agreement itself and in the Franchise Information Guide given to plaintiffs prior to execution of the agreement. Plaintiffs further allege that defendant knew that said representations were false and that defendant had no intention of fulfilling said representations at the time they were made. In addition to rescission, plaintiffs seek actual damages in the amount of $124,898.00 and punitive damages in the amount of $500,000.00. Count II states a claim for breach of contract and seeks both rescission of the agreement and $124,898.00 in damages. Count III states a claim for conversion and/or prima facie tort with respect to the actions of defendant and seeks $124,898.00 in actual damages and $500,000.00 in punitive damages. Count IV states a claim for violation of the California Franchise Investment Law, Cal. Corp.Code § 31000, et seq., and seeks both rescission of the agreement and $124,898.00 in damages.
Count V purports to state a claim under the Federal RICO statute. Plaintiffs allege that defendant is a "person" and an "enterprise" as those terms are used in the statute. 18 U.S.C. §§ 1961(3), (4). In addition, plaintiffs' complaint alleges, as follows:
[Defendant] did willfully, unlawfully and knowingly conduct its affairs through a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5), in violation of 18 U.S.C. § 1962(c), in that they committed acts in violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), in that said misrepresentations were made as part of a fraudulent scheme or artifice to defraud and deceive plaintiffs and to induce them to enter into the Agreement and while attempting to, and for the purpose of, executing this artifice and scheme to defraud and deceive plaintiffs, [defendant], its representatives, agents, and employees, in the course and scope of their employment, contacted plaintiffs by telephone and through the use of the United States Postal System on more than two (2) occasions.
Plaintiffs' Complaint ¶ 47. Plaintiffs further allege in Count V that defendant's scheme injured them in their business and property in the amount of $124,898.00 and they seek damages, trebled in accordance with 18 U.S.C. § 1964(c), in the amount of $124,898.00.

*604 II. PERSONAL JURISDICTION
Defendant first moved to dismiss plaintiffs' complaint on the ground that this Court lacks in personam jurisdiction over defendant. Defendant is a non-resident and it was served with process under Missouri's long-arm statute.
In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal diversity court is required to engage in a two-step inquiry: first, whether defendant committed one of the acts enumerated in the long-arm statute; and second, whether the exercise of personal jurisdiction over defendant violates the due process clause of the fourteenth amendment. The Land-O-Nod Company v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982). Plaintiff, the party that is seeking to invoke federal jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the party challenging the jurisdiction. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982). While the facts are viewed in the light most favorable to the plaintiffs, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist...." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted). See also Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.1977) (plaintiff need only make a prima facie showing of jurisdictional facts through submission of affidavits plus discovery materials); Greycas, Inc. v. Anderson, 584 F.Supp. 894, 895-96 (E.D.Mo.1984); 4 Wright & Miller, Federal Practice and Procedure: Civil § 1068 at 250 (1969).
Missouri's Long-Arm statute provides:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
§ 506.500, R.S.Mo. (1982).
The due process clause of the fourteenth amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. The due process clause requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d at 1340. Accord World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, ___ U.S. ___, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). See also Helicopteros Nacionales de Colombia S.A. v. Hall, ___ U.S. ___, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297, 100 *605 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod, 708 F.2d at 1340. The first three factors are of primary importance and the last two are of secondary importance. Id.
Plaintiffs argue that personal jurisdiction over defendant is authorized under the long-arm statute, specifically the "transacting business" clause of said statute. Plaintiffs alleged that they are franchisees of defendant franchisor and that they operate said franchise in the State of Missouri. In State ex rel. Newport v. Wiesman, 627 S.W.2d 874 (Mo. banc 1982), the Supreme Court of Missouri held that an airplane manufacturer transacted business in the State of Missouri, for purposes of the long-arm statute, where said manufacturer had established two (2) franchised dealers for the purpose of sale and service of aircraft in the State of Missouri. Id. at 877, citing Ponder v. Aamco Automatic Transmission, Inc., 536 S.W.2d 888 (Mo. Ct.App.1976). Under Wiesman, defendant is transacting business in the State of Missouri through its franchisee, plaintiffs. This result is particularly compelling, given the extent of dominion and control that defendant was to exert over plaintiffs' business under the franchise agreement. Under the agreement, plaintiffs promised to pay defendant a royalty of 6% of the monthly gross revenues, to maintain defendant's trademark or service mark on the front of their store and all products sold by plaintiffs, to submit regular reports to defendant, to allow regular inspections by defendant and its field representatives, and to be subject to defendant's right to limit the products and services which plaintiff could offer for sale. In addition, plaintiffs were required to adhere to defendant's "Standard Operating Procedure Manual", to submit to defendant's wishes concerning plaintiffs' corporate governance, and to comply with defendant's limits on plaintiffs' business activity in Missouri. Under these circumstances, defendant is clearly subject to this Court's in personam jurisdiction under Missouri's long-arm statute.
This Court is also satisfied that the exercise of personal jurisdiction over defendant in this case comports with the minimum requirements of due process. Although defendant appears to have avoided actually "stepping foot" in Missouri, defendant has engaged in systematic and continuous contacts with the State of Missouri by virtue of the establishment of the franchise that is the subject matter of this action. These contacts were clearly purposeful. It cannot be maintained that it would be unfair for defendant to defend this action in Missouri when defendant's products are sold and advertised in Missouri, when defendant's trademark is required by defendant to be displayed at plaintiffs' business, and when defendant exercises a great deal of control over plaintiffs' business. In addition, plaintiffs' cause of action relates directly to defendant's contacts with the State of Missouri and the State of Missouri has a very strong interest in providing a forum for its residents who are allegedly harmed as franchisees by an out of state franchisor. Under these circumstances, maintenance of this suit in Missouri does not offend "traditional notions of fair play and substantial justice."
Accordingly, defendant's motion to dismiss for lack of personal jurisdiction must be denied.

III. PROPER FORUM
Defendant argues that the venue of this case is improper and that this case should be transferred to the United States District *606 Court for the Northern District of California for two (2) reasons. First, defendant argues that the forum selection clause in the franchise agreement is enforceable and requires plaintiffs to sue only in California. Second, defendants argue that a transfer is warranted under the doctrine of forum non conveniens as codified in 28 U.S.C. § 1404(a).
The forum selection clause in the franchise agreement provided, as follows:
This franchise agreement and the construction thereof shall be governed by the laws of the State of California. The parties agree that to the extent any action is brought in law or in equity, the parties covenant, agree and stipulate that such action may be brought only in the United States District Court for the District of California or the Superior Court of the State of California, in and for the County of Santa Clara. Both parties hereby stipulate to the jurisdiction of said courts. The parties further stipulate that the judgment of either of said courts shall be enforceable in law or equity and any jurisdiction within the United States, its territories or possessions, or in accordance with the laws and courts of any foreign jurisdiction.
Franchise Agreement at 63. Plaintiffs admit that, if valid, the forum selection clause requires this Court to grant defendant's motion to transfer. However, plaintiffs argue that said clause is invalid and unenforceable.
Because the source of subject matter jurisdiction in this case is diversity of citizenship[1], the initial question before this Court is whether State or Federal law provides the rule for determining the enforceability of the forum selection clause in the agreement in question. cf. ECC Computer Centers v. Entre Computer Centers, 597 F.Supp. 1182, 1184 (N.D.Ill.1984) (issue need not be reached because State and Federal law produce the same result). In Dick Proctor Imports, Inc. v. Sumitomo Corporation of America, 486 F.Supp. 815 (E.D.Mo.1980), this Court held that Federal law governs the issue, as follows:
Federal Courts are bound to follow forum law with respect to matter of substance, ...; Federal Courts are not so bound as to other matters. The issue of whether the venue limitation in question is substantive has split the courts which have decided it so far. See, Taylor v. Titan Midwest Constr. Corp., 474 F.Supp. 145 (N.D.Tex.1979), and cases cited therein. This Court must agree, however with Taylor, id.

In a sense, the validity of a venue limitation provision is a matter of contract law. In a larger sense, however, this issue concerns the proper venue in the Federal Court system. Venue is clearly a matter of procedure, and, as such, governed by Federal law.... The provision does not alter existing rules of contract enforcement or interpretation, but rather, alters the venue provisions as set out in the relevant statutes. The venue statutes of Missouri do not apply in this Court, and the provision therefor alters only the Federal statutory scheme as to venue. This attempted alteration of the Federal venue provision should be governed by Federal law.
Dick Proctor, 486 F.Supp. at 818 (citations omitted). The holding of Dick Proctor is supported by the weight of authority and has been followed by other courts. Crewe Tractor and Equipment Co., Inc. v. Deutz Corp., 574 F.Supp. 139, 142 (E.D.Va.1983) (discusses Dick Proctor with approval); C. Pappas Co. v. E. & J. Gallo Winery, 565 F.Supp. 1015, 1017 (D.Mass.1983) (enforcement of forum selection clauses to be decided under Federal law); Hoffman v. Burroughs Corporation, 571 F.Supp. 545, 548 (N.D.Tex.1982) (federal common law determines *607 enforceability of forum selection clause); Quick Erectors, Inc. v. Seattle Bronze Corp., 524 F.Supp. 351, 355-57 (E.D.Mo.1981) (applies Federal law to determine validity of forum selection clause); Richardson Engineering Co. v. International Business Machines Corp., 554 F.Supp. 467, 469 n. 3 (D.Vt.1981); Cutter v. Scott & Fetzer Co., 510 F.Supp. 905 (E.D. Wisc.1981); Taylor v. Titan Midwest Const. Corp., 474 F.Supp. 145, 147 (N.D. Tx.1979) (Federal law applies to determine validity of forum selection clause); St. Paul Fire & Marine Insurance Co. v. Travelers Indemnity Co., 401 F.Supp. 927 (D.Mass.1975); Gaskin v. Stumm Handel GmbH, 390 F.Supp. 361 (S.D.N.Y.1975). In the opinion of this Court, Dick Proctor was correctly decided and continues to be good law. The enforceability of forum selection clauses is "primarily a matter of venue and not a matter of contract law." Taylor, 474 F.Supp. at 148 n. 2. Accordingly, Federal law provides the principles for determining the validity of the forum selection clause at issue herein.[2]
The Federal rule governing the enforceability of forum selection clauses was set out in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Under The Bremen, freely negotiated forum selection clauses are enforceable and valid unless enforcement would be unreasonable and unjust, the clause was inserted in the contract through fraud or overreaching, or "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916. The party challenging the enforceability of the clause bears the burden of persuasion that one of these exceptions exist. Id. See also Bense v. Interstate Battery System of America, 683 F.2d 718, 721-22 (2d Cir.1982); Dick Proctor, 486 F.Supp. at 818.
In the case at bar, plaintiffs do not suggest that there was any fraud or overreaching with respect to the forum selection clause. Plaintiffs do allege that defendant engaged in various acts of fraud prior to execution of the franchise agreement, but said allegations go to the promises made in the franchise agreement rather than the forum selection clause itself. See Hoffman v. Burroughs Corporation, 571 F.Supp. 545, 548 (N.D.Tx.1982) ("a forum selection clause will be unenforceable only if it is shown that `the inclusion of that clause in the contract was the product of fraud or coercion'."). In addition, plaintiff Benge is not an uneducated person. He holds an MBA Degree from Boston University, is the President of Pulson Corporation, and worked for three (3) years as a Group Manager of McDonnell Corporation. Plaintiffs have not provided any evidence that they agreed to the forum selection clause other than knowingly and intelligently.
Plaintiffs also failed to carry their burden of persuasion that enforcement of the forum selection clause would be unjust or unreasonable in this case. The contract in question was executed in California and the negotiations that led up to said contract were conducted in California. Plaintiffs *608 did not find it too inconvenient to create this contract in California and, therefore, logic suggests that they will not find it too inconvenient to litigate in California. Plaintiffs' witnesses may be in Missouri, but defendant's witnesses are in California. As in Dick Proctor, "[a]ny inconvenience to plaintiff[s] should have been foreseen when the agreement was signed." Dick Proctor, 486 F.Supp. at 818 (citation omitted). "This Court cannot say `that trial in the contractual forum will be so gravely difficult and inconvenient that [plaintiffs] will for all practical purposes be deprived of [their] day in court'." Id. (citation omitted).
Finally, plaintiffs argue that the forum selection clause is unenforceable, because enforcement of said clause would contravene a strong public policy of Missouri, namely, its prohibition against the enforcement of such clauses. In Dick Proctor, in dicta, this Court questioned the continuing validity of Reichard v. Manhattan Life Insurance Co., 31 Mo. 518 (1862), because Reichard was contrary to the growing modern trend to enforce forum selection clauses and no recent Missouri Court had followed Reichard. Dick Proctor, 486 F.Supp. at 817-18. However, in State ex rel. Gooseneck Trailer Manufacturing Co., Inc. v. Barker, 619 S.W.2d 928 (Mo.Ct. App.1981), a Missouri Court of Appeals rejected the holding in Dick Proctor, followed Reichard, and held that forum selection clauses are void in Missouri as against public policy. Plaintiffs argue that Gooseneck is evidence of Missouri's strong public policy against the enforcement of forum selection clauses and that, under the Federal rule, enforcement of the forum selection clause in this case would contravene that policy. This argument must be rejected for two (2) reasons. First, this Court is not convinced that Reichard and Gooseneck represent a "strong" public policy of Missouri. Reichard is over 100 years old and contrary to the modern trend. Gooseneck is a single, isolated decision of a Missouri Court of Appeals and the opinion does not contain any meaningful discussion of the reasons for or against the validity of forum selection clauses. In addition, a recent decision by another Missouri Court of Appeals, State ex rel. Marlow v. Hess, 669 S.W.2d 291 (Mo.Ct.App.1984), while distinguishing Gooseneck and Reichard from the facts before it, impliedly expressed approval of the modern trend. Id. at 293. Second, acceptance of plaintiffs' argument would lead to an absurd result. If a State's rule with respect to the enforceability of forum selection clauses is a relevant public policy under The Bremen, then there would be no need to apply Federal law, because the Federal rule would then be the forum rule in every case. In the opinion of this Court, the public policy that is relevant under The Bremen must be some policy that is independent of the forum's view of forum selection clauses. See Quick Erectors, Inc., 524 F.Supp. at 356-57 (enforcement of forum selection clause would contravene Missouri's policy against agreements that contractually shorten the limitations period provided for by statute). Therefore, enforcement of the forum selection clause in this case would not contravene any strong public policy of Missouri.
Accordingly, the forum selection clause in the franchise agreement is enforceable and defendant's motion to transfer this case to the United States District Court for the Northern District of California must be granted. It is not necessary to consider defendant's alternative argument that this case should be transferred under the doctrine of forum nonconveniens. In addition, this Court will not consider defendant's motion to dismiss plaintiffs' RICO count. This motion is best left to the Court that receives this case upon transfer.
NOTES
[1] The parties in this case have briefed the forum selection clause issue as if this is purely a diversity case. However, an argument can be made that Count V of plaintiffs' complaint is a Federal question claim and that Counts I through IV are pendent State law claims. Under the latter analysis, Federal law would clearly supply the rule of decision with respect to the enforceability of the forum selection clause. Because neither plaintiffs nor defendant have treated the issue in these terms, this Court will not do so.
[2] By treating the issue as one governed by Federal law, further inquiry into complex and detailed legal issues is avoided. Taylor, 475 F.Supp. at 147 n. 2. For example, if the validity of the forum selection clause at issue herein were a substantive matter for which State law provided the rule of decision, then the initial question faced by this Court would be which State's law applies. Under Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this Federal diversity Court must follow the choice-of-law rules of Missouri, the forum State, to determine which State's law applies. See generally, Hansen v. Sears, Roebuck & Co., 574 F.Supp. 641, 643 (E.D.Mo.1983). However, in this case the analysis is complicated by the presence of a choice-of-law clause in the franchise agreement which stipulated that California law will be applied. Assuming that Missouri substantive law applies to determine the validity of the choice-of-law clause, Missouri courts would likely enforce the clause and apply California substantive law. Central States, Southeast and Southwest Areas Pension Fund v. Aalco Express Co., Inc., 592 F.Supp. 664, 666 (E.D.Mo.1984). The parties in this case failed to brief these possibilities and it is not clear whether the forum selection clause would be enforceable under California law.